CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 27 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IRA WAYNE CLONIGER, ) | Civil Action No. 7:13cv00046 |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **2254 MEMORANDUM OPINION** |
| ) | |
| HAROLD W. CLARKE, DIRECTOR ) | |
| OF VIRGINIA DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | By: Samuel G. Wilson |
| Respondent. ) | United States District Judge |

This is a habeas petition by Ira Wayne Cloniger pursuant to 28 U.S.C. § 2254, challenging his 2007 first-degree murder conviction in the Circuit Court of Rappahannock County, Virginia. A review of the state court records shows that Cloniger never raised on direct appeal of his conviction to the Supreme Court of Virginia any federal constitutional claim, and that although he filed a petition for writ of habeas corpus in the Circuit Court of Rappahannock County, Virginia, that court dismissed his petition on the merits, and Cloniger failed to file a timely appeal to the Supreme Court of Virginia. Under the circumstances, all of Cloniger's claims that might be cognizable in federal habeas are unexhausted and procedurally defaulted, and the court dismisses his petition.

I.

While on bond for malicious wounding for stabbing one victim, Cloniger stabbed another. According to the Commonwealth's evidence, as the victim, Edward Carelton Fletcher, Jr., lay dying and gasping for breath, Cloniger kicked and urinated on him. (Trial Tr. vol. 1, 224–25, Jan. 22, 2007.) At trial, Cloniger did not deny stabbing Fletcher, but rather claimed that

he was enraged because Fletcher had just raped his girlfriend. The jury found Cloniger guilty of first-degree murder, and the Circuit Court sentenced him to life imprisonment. Cloniger appealed to the Court of Appeals of Virginia, raising purely state-law claims; that court denied his appeal, and the Supreme Court of Virginia refused his petition for writ of error. Cloniger, in turn, filed a petition for writ of habeas corpus in the Circuit Court of Rappahannock County. That court dismissed his petition on the merits, and Cloniger failed to file a timely appeal to the Supreme Court of Virginia.

Very liberally construed, Cloniger's habeas petition in this Court raises four claims: (1) he was denied the right to confront and cross-examine a witness; (2) the prosecution engaged in misconduct in claiming at trial that Cloniger kicked and urinated on the victim as the victim was gasping for breath and dying;[1] (3) the jury was not properly separated from witnesses, reporters, and the deceased's family and friends, and was, therefore, improperly influenced; and (4) he was heavily medicated and not competent during his trial. None of these claims have been properly and timely raised in the Supreme Court of Virginia. Consequently, this court, *sua sponte*, notified Cloniger that it appeared that all of his claims that might be cognizable in federal habeas were unexhausted and procedurally defaulted and that this court would dismiss his petition if he failed to show within fourteen days either cause and prejudice to excuse his default or that a miscarriage of justice would occur if he were not allowed to pursue his collateral attack. Cloniger has not responded.

---

[1] The claim is not only frivolous, there is something stunning about the argument he makes to support it. He claimed the victim lived only seconds, "showing no way gasping for breath." (Petition 12, ECF No. 1.)

2

## II.

Cloniger has raised none of his current federal habeas claims (which, liberally construed, are based on federal law[2]) in a timely appeal to, or petition in, the Supreme Court of Virginia, and the time to raise those claims has passed. See Virginia Code § 8.01-654(A)(2). Therefore, the claims are simultaneously exhausted and defaulted in federal habeas, Bassett v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), unless Cloniger shows either (1) cause and prejudice or (2) a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749–50 (1991). He has shown neither.

To show cause, Cloniger must demonstrate that there were "objective factors," external to his defense, impeding him from raising his claim at an earlier stage. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, he must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. at 488.

The "miscarriage of justice" exception is a narrow exception to the cause requirement. A habeas petitioner falls within this narrow exception if he can demonstrate that a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. Id. at 496. Actual innocence means "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). To show actual innocence as a gateway to his defaulted claim, Cloniger must establish that in light of new evidence,

---

[2] "The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (citing 28 U.S.C. § 2254(a)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)).

evidence not presented at trial, "it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).

In determining whether Cloniger has met this standard, this court, as a habeas court, "must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under the 'rules of admissibility that would govern at trial.'" House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327–28). It must then make "a probabilistic determination about what reasonable, properly instructed jurors would do." Schlup, 513 U.S. at 329. "[B]ecause a Schlup claim involves evidence the trial jury did not have before it, the inquiry requires a federal court to assess how reasonable jurors would react to the overall, newly supplemented record." House, 547 U.S. at 519.

Here, Cloniger offers nothing as cause and prejudice to excuse his procedural default and suggests nothing that even remotely satisfies the miscarriage of justice exception's requirement that Cloniger produce new evidence of such a character that, had it been produced at trial, it is more likely than not that no reasonable juror would have convicted him of first-degree murder.[3] Accordingly, Cloniger has procedurally defaulted his federal habeas claims, and the court dismisses his petition.

---

[3] Cloniger seems to suggest that he was too intoxicated to premeditate: "with the drinking involved, as you might imagine there can't be first-degree murder can there be?" (Pet. for Writ of Habeas Corpus 5, ECF No. 1.) The answer of course is—yes there can be. "[M]ere intoxication from drugs or alcohol does not negate premeditation." Giarratano v. Virginia, 220 Va. 1064, 1073 (1980). Rather, to establish an intoxication defense, the defendant must prove that the intoxication was so complete as to render the defendant unable to deliberate or premeditate. Savino v. Murray, 82 F.3d 593, 601 (4th Cir. 1996); Essex v. Virginia, 228 Va. 273, 282 (1984). Even if there is evidence of extreme intoxication, the fact finder may find deliberation and premeditation if there is proof that the defendant was "in full control of his faculties and knew exactly what he intended to do." See Fitzgerald v. Virginia, 223 Va. 615, 631 (1982). Though there was evidence at Cloniger's trial that Cloniger had been drinking when he attacked Fletcher, it also discloses that he did exactly as he intended because he claims to have been enraged. He then quickly called his mother and absconded before the police arrived. Under the circumstances, it is not "more likely than not" that no reasonable juror would have convicted him of the underlying offense had evidence of his intoxication been marshaled at trial to negate premeditation.

## III.

For the reasons stated, the court dismisses Cloniger's petition.

**ENTER:** March 27, 2013.

_____
UNITED STATES DISTRICT JUDGE